UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DESIGN X MANUFACTURING, INC., | : |
| Plaintiff, | : NO. 3:06CV1381 (MRK) |
| v. | : |
| ABF FREIGHT SYSTEMS, INC., | : |
| Defendant. | : |

**RULING AND ORDER**

In this case, Design X Manufacturing, Inc. ("Design X") has sued ABF Freight Systems, Inc. ("ABF Freight") under the Carmack Amendment, 49 U.S.C. § 14706, as well as under the Connecticut Unfair Trade Practices Act (CUTPA) and for common law negligence and breach of contract. Pending before the Court is ABF Freight's Motion for Summary Judgment [doc. # 49]. For the reasons that follow, ABF Freight's Motion for Summary Judgment is GRANTED.

**I.**

The facts of this case are not complex. Design X contracted with ABF Freight to transport a shipment of furniture to one of Design X's customers, Red the Salon, which is located in Birmingham, Michigan. ABF Freight subcontracted a turnkey company, InSite Logistics ("InSite"), to deliver the furniture from the final switching point in Dearborn, Michigan to the second floor of the building where Red the Salon was located. Unable to get one of the pieces of furniture, a reception desk, to the second floor, InSite apparently left the desk in the first floor lobby of another business in the building. Red the Salon was required to hire another turnkey company to get the desk to the second floor. The main dispute revolves around who damaged the desk and when. According to Design X, the reception desk was damaged by InSite in its failed attempt to deliver it to the second

floor, and the desk was later discarded as unsalvageable. ABF Freight argues that there is no evidence that it or InSite damaged the desk and questions why Red the Salon would have paid several thousands of dollars to a second company to deliver an unsalvageable desk to the second floor.

Design X claims $15,835 in damages for the loss of the desk itself and for the cost of hiring the second turnkey company. It also seeks upwards of $250,000 in damages for loss of business and reputation.

## II.

As this Court has stated on many previous occasions, summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255; *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008). If the moving party carries its

burden, the party opposing summary judgment "may not rely merely on allegations or denials." Fed. R. Civ. P. 56(e)(2). Rather, the opposing party must "set out specific facts showing a genuine issue for trial." *Id*. In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III.

ABF Freight makes three main arguments in support of its Motion for Summary Judgment [doc. # 49]. First, it contends that all of Design X's state law claims are preempted by the Carmack Amendment. Second, it argues that Design X has failed to make out a *prima facie* case under the Carmack Amendment. And third, ABF Freight asserts that even if Design X has made out a *prima facie* case, ABF Freight's liability is limited to $5.00 per pound, or a total of $1,700. The Court agrees with ABF Freight on each argument.

## A.

It is well established that the Carmack Amendment preempts state law claims arising from the shipment of goods in interstate commerce. *See, e.g.*, *Project Hope v. M/V Ibn Sina*, 250 F.3d 67, 74 n.6 (2d Cir. 2001) ("In enacting [the Carmack Amendment], Congress intended to provide interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability. The Carmack Amendment did this both by establishing a single uniform regime for recovery by shippers directly from [the] interstate common carrier in whose care their [items] are damaged, and by preempting [the] shipper's state and common law claims against a carrier for loss or damage to goods during shipment." (citations and quotation marks omitted));

*Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 378 (2d Cir. 1994)("[T]he Carmack Amendment preempts state common law remedies that might be asserted against a carrier for damages to goods shipped under a proper bill of lading."); *Prime Materials Recovery, Inc. v. Martin Roy Transp.*, No. 3:07cv1169 (AHN), 2008 WL 2095550, at *1 n.1 (D. Conn. May 14, 2008); *see also Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687-88 (9th Cir. 2007); *Shao v. Link Cargo (Taiwan)*, 986 F.2d 700, 704-05 (4th Cir. 1993); *Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112, 1120-21 (10th Cir. 1989).

Design X argues that its state law claims are not preempted because they seek damages caused by InSite at the delivery site. These damages, Design X argues, are separate and distinct from damages caused by the shipment of the goods in interstate commerce. Design X cites *Gordon v. United Van Lines*, 130 F.3d 282 (7th Cir. 1997), as support for this argument. However, *Gordon* is clear that "the Carmack Amendment bars a shipper from seeking any other remedy [that] either state statutory or common law provides against a carrier for *damages to the shipper's goods* that have been transferred in interstate commerce." *Id.* at 288 (emphasis added). This holding would, of course, include damage caused to the goods during the course of delivery, as Design X alleges in this case. In fact, the Carmack Amendment explicitly covers damage caused by the delivering carrier, which is defined as "the carrier performing the line-haul transportation nearest the destination." 49 U.S.C. § 14706(a)(1). Design X does not dispute that InSite qualifies as a delivering carrier.

Design X further argues that its claim for $250,000 in damages to business or reputation is not preempted by the Carmack Amendment because it arises from the claims process and not from the actual shipment of goods. Damages incurred during the claim process, Design X argues, are "separate and independently actionable harms that are distinct from the loss of, or the damage to, the

goods." *Gordon*, 130 F.3d at 289. In *Gordon*, the Seventh Circuit held that the plaintiffs' claim for intentional infliction of emotional distress was not preempted by the Carmack Amendment. *Id.* at 289. However, the Seventh Circuit also held that the plaintiffs' claims for breach of contract, negligence, and the state trade practices act – the precise causes of action alleged here – *were* preempted. Even the plaintiffs' claim for common law fraud during the claims process was found to be preempted because "the claims process is directly related to the loss or damage to the goods that were shipped." *Id.* Indeed, as the Court recognized, "people would not be involved in the [claims] process unless either loss or damage had occurred." *Id.*

The Court accepts (without deciding) that there may be certain claims that are so far removed from the normal shipping relationship that they are not be preempted by the Carmack Amendment.[1] However, Design X's state law claims do not fall into the narrow category of non-preempted claims recognized in *Gordon*. The alleged loss to business and reputation flowed directly from the damage to the goods shipped in interstate commerce and the subsequent claims process. Indeed, similar claims could probably be brought in most Carmack Amendment cases, which would defeat the Carmack Amendment's purpose of "establishing a single uniform regime for recovery" and "provid[ing] interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability." *Project Hope*, 250 F.3d at 74 n.6. Thus, the Court GRANTS summary judgment in favor of ABF Freight with respect to Design X's claims under CUTPA and for common law negligence and breach of contract.

---

[1] The Court notes that some courts have rejected *Gordon*'s approach to preemption under the Carmack Amendment. *See, e.g.*, *Smith v. UPS*, 296 F.3d 1244, 1248-49 (11th Cir. 2002). The Court expresses no view on whether *Gordon* was rightly decided under the Carmack Amendment because even accepting the holding in *Gordon*, it does not assist Design X in this case.

**B.**

The next question is whether Design X has made out a *prima facie* case under the Carmack Amendment. In order to make out a *prima facie* case, Design X needs to show "(1) delivery (of the goods) to the carrier in good condition, (2) arrival in damaged condition, and (3) the amount of damages caused by the loss." *Project Hope*, 250 F.3d at 74 n.6. ABF Freight argues that Design X has failed to establish both the second and third prongs of the *prima facie* case. However, the Court need not address the third prong, because it concludes that Design X has failed to provide any evidence to show that the desk arrived in a damaged condition.

It is undisputed that no one from Design X was present when the desk arrived or when it was unsuccessfully delivered to the second floor. In his deposition, Mr. Rosenberg states that he heard from Red the Salon that InSite damaged the desk. Of course, this statement is inadmissible hearsay and therefore cannot be used to create a genuine issue of fact on a motion for summary judgment. *See ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 151 (2d Cir. 2007) ("[I]nadmissible evidence [is] insufficient to defeat summary judgment."). Design X also claims that there are photographs showing the damage to the desk while it sat in the first floor lobby of Red the Salon's building. Unfortunately, however, Design X has not provided these photographs to the Court, or offered an affidavit from someone who took the photographs to verify that the damaged depicted occurred in the course of InSite's delivery. The only other evidence relating to damage is an internal email sent from an ABF Freight executive to others within the company that recounts what Design X alleged happened to the desk. *See* Pl.'s Opp'n to Summ. J. [doc. # 50] Ex. E. An email recounting what Design X told ABF Freight that Red the Salon said is hearsay within hearsay, is inadmissible, and is of no use to Design X.

At oral argument, the Court informed Design X's counsel that it was concerned by this lack of evidence and the Court gave Design X sixteen days to file a supplemental affidavit from someone at Red the Salon with personal knowledge about the damage to the reception desk or to provide the Court with the photographs that Design X alleges show the damaged condition of the desk. Design X let this deadline pass without so much as a word to the Court. As a courtesy, the Court held an on-the-record status conference with the Parties to inquire into whether Design X intended to file a supplemental affidavit. Counsel for Design X apologized that he had not filed the affidavit and requested more time to do so. The Court gave Design X an additional week, until October 31, 2008, to file its supplemental affidavit. That date too has passed without anything filed by Design X (or, the Court might add with chagrin, without the courtesy of a call to the Court to let it know that Design X would not be filing anything).

Having had numerous opportunities to put into the record evidence that ABF Freight or InSite was responsible for the damage to the desk and having submitted nothing, the Court has no choice but to conclude that Design X has no evidence that ABF Freight or InSite damaged the desk in question. There certainly is nothing in the record to support Design X's claim. As a consequence, Design X has failed to make out a *prima facie* case under the Carmack Amendment, and ABF is entitled to summary judgment on Design X's Carmack Amendment claim.

## C.

Even if the Court were to conclude that Design X had established a *prima facie* case under the Carmack Amendment, the Court would nevertheless hold that ABF's liability is limited to $1,700. The Carmack Amendment allows carriers to limit their liability "to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and

shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C. § 14706(c)(1)(A). Liability limitations must be set forth in a reasonably communicative form to the shipper and must offer the shipper the opportunity to declare and pay for a higher valuation. *See Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 59-60 (2d Cir. 2006).

Design X does not dispute that it had the option of declaring and paying a higher valuation on the goods. Nor could they make such an argument given that it was Design X that prepared the bill of lading. *Cf. Mech. Tech. Inc. v. Ryder Truck Lines, Inc.*, 776 F.2d 1085, 1089 (2d Cir. 1985) ("When a sophisticated shipper, using his own bill of lading form, leaves blank the space provided for declaring the released value of the goods, we will presume that he did so deliberately with full knowledge of the consequences under the applicable tariff."). Rather, in their Opposition to the Motion for Summary Judgment [doc. # 50], Design X argues that ABF Freight has not proven that the liability limitation was set forth in a reasonably communicative form.

Apparently, the Service Quotation that specified the $5.00 per pound limitation went through several iterations before being finalized. ABF Freight submitted Quote "B" to the Court. However, the bill of lading references Quote "D," which was not produced during discovery and which ABF Freight claims was lost. In response to questions from the Court about Quote "D," ABF Freight provided a Supplemental Affidavit [doc. # 54] by Donald Black, a cargo claims analyst at ABF Freight. In the affidavit, he avers that "all versions of ABF's Turnkey Service Quotation for Design X include[d] the same $5.00 per pound limitation of liability with respect to cargo loss and damage, which is standard for all of our Turnkey Service Quotations." Def.'s Supp. Aff. in Support of Summ. J. [doc. # 54], ¶ 6. This is consistent with the liability limitation as stated in ABF Freight's rules

tariff, ABF 111, which ABF Freight has provided for the Court.

Furthermore, Robert Rosenberg, vice-president of Design X, acknowledged that he was familiar with ABF Freight's liability limitations. In response to the question, "Did you ever read the part on the bottom [of the Service Quotation] where it says: Liability. ABF's liability shall not exceed the lesser of the released value provided in the NNFC 100 Series or five dollars per pound," Mr. Rosenberg answered "Yeah. You're quoting a tariff law there for the shipping." *See* Def.'s Exhibits re Mot. for Summ. J. [doc. # 30] at 118-19. Mr. Rosenberg also acknowledged in his deposition that he had looked at ABF Freight's rules tariff "[b]efore, during and after" the shipment. *See id.* at 119. And Design X does not contest that the liability limitations were available on ABF Freight's website during the time period in question.

In short, ABF Freight has provided the Court with ample evidence that the liability limitation for Design X's shipment was $5.00 per pound and that it was communicated to Design X in a reasonably communicative form. Design X has not produced any evidence to the contrary and, indeed, does not even appear to contest the liability limitation beyond arguing that ABF Freight has not sustained its burden. Thus, even if Design X had made out a *prima facie* case under the Carmack Amendment – and it has not done so – ABF Freight's liability would nevertheless be limited to the total sum of $1,700.[2]

---

[2] Design X also argues that even if the liability limitation applies, the limit on damages is actually $24,950, not $1,700. Design X calculates this amount by taking the certified weight of the entire shipment, 4,990 pounds, and multiplying it by $5.00 per pound. There are several problems with this line of argument. First of all, the entire shipment included eight pieces of furniture that were not damaged and are not at issue in this case. It is absurd to suggest that Design X could recover damages based on the weight of the entire shipment, when eight of the nine pieces arrived in good condition, simply because all nine pieces were part of the same shipping order. Design X cites no case that support such an argument. Second, Mr. Rosenberg admitted during his deposition that the damaged desk weighed 340 pounds, meaning that the liability for damage to that desk was

**IV.**

For the foregoing reasons, the Court **GRANTS** ABF Freight's Motion for Summary Judgment [doc. # 49]. **The Clerk is directed to enter judgment in favor of ABF Freight and to close this file**.

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: November 4, 2008.**

---

limited to $1,700. Design X cannot now contest this admission by Design X's vice-president.